In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-477 CV


____________________



WILLIAM LLOYD BRIDGES, Appellant



V.



ANDREWS TRANSPORT, INC., Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-161,158






OPINION


 William Lloyd Bridges sued Andrews Transport, Inc. and Andrews Leasing, Inc. (1) 
for fraud, conversion, restitution of money had and received, unjust enrichment, and
breach of contract. Andrews Transport, Inc. filed a counterclaim against Bridges for
conversion, unjust enrichment, restitution for money paid, quantum valebant, and
declaratory judgment. The trial court granted a summary judgment for Andrews
Transport, Inc., and denied summary judgment for Bridges. Bridges presents eight issues
on appeal. 

 Bridges is a truck driver who owns his own truck. Bridges and Andrews Transport
entered into a lessor/lessee relationship created by a written Equipment Lease Agreement
of a 1989 Kenworth truck. Bridges and Andrews Transport also entered into an
employment relationship created by an at-will employment agreement. According to the
uncontroverted statement in the appellees' brief, both the lease contract and Bridges's
employment with Andrews ended May 12, 1997. 

 The Equipment Lease included the following language: 

 Lessor [Bridges] shall pay all of the expenses on his/her equipment,
including, but not limited to, driver's wages, federal and state taxes levied
upon payroll, worker's compensation insurance, license tags, registration
fees, inspection fees, fuel, oil, parts, tires, labor charges, highway use tax,
fire, theft, and collision insurance, Ad Valorem tax, personal property tax,
IMC tax, and any other taxes levied against his/her equipment and any other
expenses which may be incurred based upon operation of the vehicle, within
the limits of the operating authorities of Lessee. 

 

 At Lessee's [Andrews Transport, Inc.] option, Lessor may charge any of the
above items to Lessee; however any such expenses paid by Lessee on behalf
of Lessor shall require appropriate pre-approval by Lessee and shall be
deducted from Lessor's next settlement check.


 The Equipment Lease provided for payment, as follows: 


 7. Settlements. Lessee will pay Lessor 67 % of freight revenue per
applicable tariffs or contracts.


 Lessee will prepare settlements on a bi-weekly basis, with payment being
issued every other Wednesday for the period ended the previous Friday for
all shipments on which Lessee has received properly and completely filled
in driver logs, freight bills, and shippers' manifest. LESSOR WILL
RECEIVE NO CASH PAYMENTS UNTIL ALL DEFICITS HAVE BEEN
PAID IN FULL.


 During the course of the relationship between the parties, Bridges would receive for
his services as a driver wages from which the employee's contribution towards payroll
taxes had been withheld. A separate settlement for rent of Bridges's truck would reflect
deductions for "DRIVER WAGES," "PAYROLL FICA EXPENSES," "PAYROLL
FUTA EXPENSE," "PAYROLL SUTA EXPENSES," and "WORKMENS
COMPENSATION EXP" from the gross revenue collected during the payment period for
hauls made with the truck. The payments were reported as rents to the Internal Revenue
Service on a Form 1099, and Bridges reported those proceeds as either a business profit
or loss. In other words, in his capacity as the lessor of the truck, Bridges was obligated
to supply a driver and pay the concomitant taxes. The equipment lease allowed Andrews
to hire a driver, for whom it paid state and federal payroll taxes and unemployment taxes,
but the lease payment was reduced by the amount of the expenses related to the driver's
employment. 

 In his petition, Bridges alleged that the deductions from his compensation under the
lease agreement, which were attributed to taxes and workers' compensation coverage, are
statutorily mandated to be the employer's responsibility and were tortiously passed on to
him. In his motion for summary judgment, Bridges alleged that he had been defrauded
because Andrews gave him a handbook stating that Andrews would provide Social
Security, workers' compensation, state disability, and unemployment insurance, when in
fact those benefits were paid by the employee. The motion for summary judgment filed
by Andrews argued that Bridges had a dual relationship with Andrews, that his status as
an employee was separate and distinct from his status as a lessor, and that recognition of
the separate legal relationships precluded all of Bridges's claims as a matter of law. In his
deposition, Bridges acknowledged that he was an employee of Andrews in 1996 and 1997
and at the same time he had another relationship with Andrews, in which he was an
"owner operator" leasing his truck to Andrews. Bridges also acknowledged that, although
he could have worked without doing so, he elected to become an employee of Andrews so
that he could acquire hospitalization insurance benefits. 

 On appeal, Bridges argues: "Defendant's conduct in causing individuals it claims
to employ to pay its employer taxes is void as a matter of law and the well-stated public
policy found within numerous judicial decisions." Bridges contends that the trial court
erred in failing to grant summary judgment in favor of Bridges because the lease agreement
was void for illegality. (2) According to the appellant, the illegality resulted from Andrews'
having caused the employee, Bridges, to pay his employer's employment tax liability. (3) 
Again according to the appellant, Andrews could not legally charge individuals the taxes
for which Andrews was responsible, then claim tax deductions for those tax payments. (4) 
Bridges claims the employment and lease arrangement caused Bridges to be charged with
both the employer's and employee's share of employment taxes through deductions from
the lease payment; then Bridges had to pay his own self-employment taxes. (5) The appellant
argues that public policy is violated by allowing an employer to avoid the payment of
employer-mandated tax liability through the rental of personal property. (6) The trial court
erred in dismissing all of Bridges's equitable claims, he asserts, because Andrews falsely
represented to taxing authorities that it paid taxes that it in fact had passed on to Bridges. (7) 

 In response to these issues, the appellees argue the dual but distinct relationships
existing in this case have been recognized in other court decisions, most notably in
Hathcock v. Acme Truck Lines, Inc., 262 F.3d 522 (5th Cir. 2001), cert. denied, __ U.S.
__, 122 S.Ct. 1298, 152 L.Ed.2d 210 (2002). Like our case, Hathcock involved a truck
driver who leased his truck to his employer in a separate lease agreement that provided for
a lease payment expressly derived from revenue less operating expenses, including payroll
taxes. Id. at 523. On appeal, Hathcock based his claims on the proposition that the
employer, Acme, was responsible for state and federal Social Security and unemployment
taxes, and the deductions from the rental check were, therefore, unlawful. Id. at 524. 
The Fifth Circuit first found that Hathcock was an employee, rather than an independent
contractor. Id. at 526. Affirming the summary judgment for the trucking company, the
court reasoned as follows:

 Undeterred, Hathcock argues alternatively that, even if Acme's lessor-drivers are deemed to be its employees, Acme nevertheless violates federal
and state law when it deducts money from a lessor-driver's rental check to
defray the employer's FICA, FUTA, and SUTA tax expenses. The tax
liabilities created by those provisions, he contends, are the exclusive
responsibility of employers. The relevant provisions, however, do not forbid
Acme's practice of charging those employee costs back to its lessors. Acme
expressly deducts from the rental check given to its lessors a fixed
percentage of the drivers' wages to recoup its employee-related costs; it does
not deduct these contributions from the paychecks given to its employees,
including drivers. Although the statutes delineate the functions of
withholding and remitting these taxes as the responsibility of the employer
vis-a-vis the taxing authority, they only bar deduction of the employer's
portion of these taxes from the "wages of an individual in the employer's
employ." The statutes do not prohibit employers from charging back and
deducting from independent contractors, suppliers, lessors, or other non-employee personnel, funds to defray the employer's costs in connection with
those taxes. As the arrangement embodied in Acme's lease agreement does
not contravene federal or state laws or regulations, much less their respective
public policies, Acme may, in keeping with its contracts, lawfully deduct
part of its employee-related expenses from its rental payments to lessors qua
lessors, even if Acme incurs those expenses by virtue of its employment of
lessors qua drivers. 


Id. at 527-28 (footnotes omitted).


 During oral argument, counsel for the appellant argued that a statute overlooked by
the Fifth Circuit compels a different holding from that in Hathcock. The code relating to
unemployment benefits provides: "An agreement by an individual employed by an
employer to pay all or a portion of a contribution or reimbursement required to be paid by
the employer under this subtitle is not valid." Tex. Lab. Code Ann. § 207.071(b)
(Vernon 1996). The contribution mentioned in Section 207.071 is found in Section
204.002 of the Labor Code. See Tex. Lab. Code Ann. § 204.002 (Vernon 1996) (An
employer shall pay a contribution on wages for employment paid.) The employer cannot
deduct any part of the contribution from its employee's wages. See Tex. Lab. Code Ann. 
§ 204.003 (Vernon 1996). Thus, the right protected by Section 207.071 is established by
the same statutes relied upon by the appellant in Hathcock. See Hathcock, 262 F.3d. at
528 n.19. The lease payment, with its various deductions, related to the consideration for
use of the truck, not the driver's wages. We conclude that Bridges's reliance on Labor
Code Section 207.071 does not distinguish this case from Hathcock. The Fifth Circuit's
reasoning in that case was sound. The existence of an employer/employee relationship
does not render a simultaneously existing lessor/lessee relationship between the same
parties void as a matter of law. We hold that the contract at issue in this case is not void
for illegality. The separate causes of action raised in Bridges' petition all depend upon the 
illegality of the contractual arrangement between the parties. Because the underlying
premise fails, summary judgment was appropriate as to all of Bridges causes of action. 

 In issue one, Bridges contends that summary judgment is precluded by the presence
of the material fact issue of whether some of the deductions from the lease payments were
for payment of employee taxes. Since issues two through seven are stated and argued as
matters of law for which Bridges seeks rendition of judgment, we presume that issue one
is argued in the alternative. There is no material dispute over the facts. The deductions
represented payroll taxes and wages Andrews paid on behalf of and to Bridges in his
capacity as its employee. The lease payment from which the deductions were made was
for the use by Andrews of equipment Bridges owned, not for wages for Bridges's services
as a driver. The records from which the lease payments were calculated indicated that the
revenue was collected on an account for a 1989 Kenworth truck owned by William
Bridges. Bridges neither alleged nor produced any evidence to raise a fact issue that the
equipment lease was a subterfuge disguising what was solely an employment relationship.

 In issue eight, Bridges contends that the trial court erred in refusing to grant
Bridges's motion to deem requests for admissions admitted on key issues regarding the
illegality of Andrews's conduct. Bridges waived this issue by failing to brief his
complaint. See Tex. R. App. P. 38.1(h). 

 We find no error in the judgment. Accordingly, we overrule issues one through
eight and affirm the judgment.

 AFFIRMED.



 _______________________________

 RONALD L. WALKER

 Chief Justice


Submitted on May 16, 2002

Opinion Delivered October 10, 2002

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.
1. Bridges alleged that Andrews Transport, Inc. was the alter ego of its parent
corporation, Andrews Leasing, Inc. No error is raised regarding Andrews Leasing, Inc. 
William Andrews and Gary Andrews also filed answers to a second amended petition filed
by Bridges, but that petition is not included in the record so we cannot determine what
allegations Bridges made against the two individual defendants. No error is raised
regarding those defendants. The trial court's order, which granted the Andrews
Transport's motion for summary judgment and denied the plaintiff's motion for summary
judgment, contains the statement, "This judgment finally disposes of all parties and all
claims and is appealable." Therefore, the judgment is final and impliedly denied all the
claims not expressly granted in the order. See Lehmann v. Har-Con Corp., 39 S.W.3d
191 (Tex. 2001). No error has been raised specifically regarding Andrews Leasing, Inc.,
William Andrews, and Gary Andrews.
2. Issue two.
3. Issue three.
4. Issue four.
5. Issue five.
6. Issue six.
7. Issue seven.